UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:17-PO-8 |
| v. | ) | Violation Nos. 4729874, |
| | ) | 4729875, 4980301, |
| JONATHAN EILAND, | ) | 4980302, & 4980303 |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

On December 24, 2015, Jonathan Eiland was stopped by park rangers and arrested, while driving through the Great Smoky Mountains National Park. Defendant Eiland is charged with the following violations: Failure to comply with a traffic control device, unsafe operation of a motor vehicle, driving under the influence of alcohol and/or drugs, refusing to submit to a breath or blood test, and having an open container of alcohol in a motor vehicle. This case came before the undersigned for a bench trial on April 27, 2017. Assistant United States Attorneys LaToyia Carpenter and Jennifer Kolman appeared on behalf of the Government. Attorney Robert R. Kurtz represented the Defendant, who was also present. The Government presented the testimony of United States Park Rangers Daniel Wilson and Joshua Baldwin. It also presented clips of video and audio recordings from Ranger Wilson's body camera and dash camera, as well as other exhibits. At the conclusion of the trial, the Court took the evidence and the arguments of counsel under advisement.

For the reasons discussed below, the undersigned finds that Defendant Eiland is guilty of violations of 36 C.F.R. §§ 4.12 (failure to comply with a traffic control device), 4.14(b)

1

(carrying or storing an open container of alcohol in a motor vehicle), 4.22(b)(1) (operating a motor vehicle without due care), and 4.23(c)(2) (refusing to submit to a breath or blood test).  However, the Court finds that the Government has failed to prove beyond a reasonable doubt that the Defendant was operating a motor vehicle while under the influence of alcohol and/or drugs to a degree rendering him incapable of safe operation as prohibited by 36 C.F.R. § 4.23(a)(1).  The Court discusses each violation in turn.

## I. FAILURE TO COMPLY WITH THE DIRECTIONS OF A TRAFFIC CONTROL DEVICE

Defendant Eiland is charged in Violation No. 4729874 with a violation of 36 C.F.R. § 4.12, which provides that the "[f]ailure to comply with the directions of a traffic control device is prohibited unless otherwise directed by the superintendent."  Ranger Wilson testified that on the afternoon of December 24, 2015, he was on duty and in his patrol car, monitoring the traffic on Little River Road in the Great Smoky Mountains National Park.  He observed a black Range Rover, traveling in the opposite direction from that which he was facing, cross the center line.  He pulled behind the Range Rover, which was driven by Defendant Eiland, and followed it for approximately five minutes.  Ranger Wilson testified that the Defendant got into the left turn lane at the "T" intersection of Little River Road and Highway 441.  Ranger Wilson testified that the Defendant turned left onto Highway 441 without stopping at a stop sign or signaling that he was turning left.  The Government presented the video recording from Ranger Wilson's dash camera in his patrol car.  The recording reveals that the Range Rover proceeded left through the intersection without stopping at the stop sign.  The Court finds that Defendant Eiland failed to comply with a stop sign, which is a traffic control device.  Accordingly, Defendant Eiland is **GUILTY** of Violation No.

4729874, charging him with a violation of 36 C.F.R. § 4.12.

## II. UNSAFE OPERATION OF A MOTOR VEHICLE

Defendant Eiland is charged in Violation No. 4729875 with a violation of 36 C.F.R. § 4.22(b)(1), which prohibits "[o]perating a motor vehicle without due care or at a speed greater than that which is reasonable and prudent considering wildlife, traffic, weather, road and light conditions and road character." This is an offense that is "less serious than reckless driving." 36 C.F.R. § 4.22(a).

Ranger Wilson testified that after the Defendant passed his position on Little River Road, he pulled in behind the Defendant and followed him for approximately five minutes. Ranger Wilson said that he observed the Defendant cross the double yellow center line on the narrow, curvy two-lane road at least three times. He said the Defendant was travelling too closely to the car in front of him for much of the time that Ranger Wilson followed him. He stated that the Defendant also turned left at the intersection of Little River Road and Highway 441 without stopping at a stop sign or signaling. Finally, Ranger Wilson testified that when the Defendant turned left across traffic into a "pull out" (a small parking area) he nearly pulled in front of an oncoming pick-up truck and had to swerve back into the turn lane. The Court has reviewed the video recording from Ranger Wilson's dash camera and finds that the video corroborates Ranger Wilson's testimony. Additionally, based upon the recording, the Court observes that many vehicles were traveling on Little River Road and Highway 441 on the afternoon of Christmas Eve in 2015. Accordingly, the Court finds that Defendant Eiland was operating his vehicle without due care considering the conditions, particularly the amount of traffic and the character of the road.

## III. DRIVING UNDER THE INFLUENCE OF DRUGS AND ALCOHOL

Defendant Eiland is also charged in Violation No. 4980301 with a violation of 36 C.F.R. § 4.23(a)(1), which prohibits "[o]perating or being in actual physical control of a motor vehicle . . . while [u]nder the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation[.]"

With respect to this charge, Ranger Wilson testified (as set out above) that he observed the Defendant cross over the center line three times, follow the car in front of him too closely, turn left without signaling or stopping at a stop sign, and nearly turn into the opposite lane in front of an oncoming truck. The Defendant exhibited this driving on a narrow, curvy road in moderate traffic on a holiday afternoon. Ranger Wilson testified that his observation of this driving behavior indicated to him that the driver might be impaired. Ranger Wilson activated his lights and signaled for the Defendant to pull over, but the Defendant delayed pulling over, passing several suitable places to stop. When the Defendant ultimately turned in to the "pull out," he left insufficient room for Ranger Wilson to pull in behind him, and Ranger Wilson had to direct him to pull forward. Ranger Wilson said that when he approached the Defendant, his eyes appeared glassy but were not red. Ranger Wilson said the Defendant's speech was slurred but acknowledged that the Defendant obtained his driver's license and other documents without fumbling. Ranger Wilson testified that an odor of alcohol emanated from the Defendant's Range Rover, but not from the Defendant's person. In addition, Ranger Wilson found open containers of alcohol in the vehicle, including a partial cup of beer that had overturned in the rear, passenger-side floorboard.

Ranger Wilson testified that the Defendant, after initially denying that he had consumed alcohol "today," admitted drinking two twelve-ounce beers with lunch about one hour

4

before being stopped. He acknowledged that the Defendant calculated the time since he had lunch, factoring in the different time zone, quickly. Also, Ranger Wilson frisked the Defendant, and found five narcotic pills in his front pants pocket. The Defendant said that he had not taken any of his prescription pain pills that day because he had not needed them. The prescription bottle, which was in the Defendant's luggage, stated the prescribed dosage was one pill every six hours as needed. The Defendant admitted that there was marijuana in his suitcase.

Ranger Wilson had the Defendant get out of his car and walk to the rear to perform field sobriety tests. The video from Ranger Wilson's dash camera reveals that the Defendant was steady on his feet and did not hold onto the vehicle. Ranger Wilson conducted three field sobriety tests. The Defendant exhibited three out of six clues on the Horizontal Gaze Nystagmus ("HGN") test, the most accurate of the three tests. Ranger Wilson testified that exhibiting four clues on the HGN indicates that an individual is intoxicated. Ranger Wilson testified that the Defendant exhibited five clues on the walk and turn test: breaking his position during the instructions, raising his arms more than six inches away from his side, failing to touch heel to toe, walking slowly and hesitantly, making an improper turn, and taking too many steps. On cross-examination, Ranger Wilson said that the Defendant broke position when he stepped back to pull up his pants. He said the Defendant raised his hand when swatting an insect away from his face. He stated that the Defendant took ten, rather than nine, steps back because he took too many steps in the turn. Also, on cross-examination, Ranger Wilson acknowledged that on his notebook on which he evaluated the Defendant's performance contemporaneously with the test, he did not check that the Defendant failed to walk heel to toe. The video recording from Ranger Wilson's dash camera shows that the Defendant was only able to do the one-leg stand test for four to five seconds on his second attempt.

Ranger Wilson said that in his opinion, the Defendant's performance on these tests indicated that he was intoxicated.

Although the evidence presented by the Government suggests that the Defendant may have been driving under the influence, the Court finds a number of facts that raise doubt as to that conclusion. First, the Court has reviewed the video clips presented by the Government and finds that while the Defendant exhibited several traffic violations, his driving does not show that he was "incapable of safe operation." The Court finds that while the Defendant "hugged" the center line during the five minutes that Ranger Wilson followed him, he was not swerving within his lane as the Government suggested. Although the Defendant started to turn into the pull-out when another vehicle was approaching, he quickly self-corrected. Based upon the driving exhibited by the Defendant during the five minutes he was followed by Ranger Wilson, the Court cannot say that the Defendant was not capable of safe operation of his vehicle.

The Court also finds that the field sobriety tests do not provide conclusive evidence of the Defendant's impairment. The most accurate of the field sobriety tests, the Horizontal Gaze Nystagmus test, did not reveal the Defendant to be impaired. With regard to the walk and turn test, the Court has some concerns that the Defendant was faulted for his hesitancy or walking slowly when asked to walk on an imaginary straight line. Moreover, Ranger Wilson's answers on cross-examination reveal explanations for two of the clues (pulling up pants for breaking position and swatting at a bug for raising hand), suggest that Ranger Wilson may have double counted two of the clues (improper turn and taking too many steps in the turn), and show that Ranger Wilson misremembered a clue (failure to touch heel to toe). Also, Ranger Wilson acknowledged that thirty-five percent of the population cannot perform the one-leg stand test even though they have

not consumed alcohol.  The Court notes that Ranger Baldwin, whom the video reveals observed the Defendant's performance on the walk and turn test and the one-leg stand test, did not offer an opinion on the Defendant's performance on the field sobriety tests or on whether the Defendant appeared to be intoxicated.  Finally, the Court observes that the Defendant was able to get in and out of Ranger Wilson's patrol car and sign his name on the signature line of the refusal of consent form, all while his hands were handcuffed behind his back.

The Court finds that while the evidence shows that the Defendant had been drinking alcohol that afternoon and that the Defendant committed the traffic violations detailed above, the Government has not shown beyond a reasonable doubt that the Defendant was intoxicated to an extent that he was incapable of safely operating his vehicle.  During argument, the Government asked the Court to consider the totality of the circumstances and referred the Court to *United States v. Hall*, 497 F. App'x 229 (4th Cir. 2012), as a case exemplifying the quantum of evidence that is sufficient to prove DUI beyond a reasonable doubt.  However, the Court finds the instant case to be distinguishable from *Hall*, in which the officer saw the defendant drive off the road and nearly hit a concrete barrier, tailgate another car at highway speeds, fall into her car's door when she got out, and give "strong indications of intoxication during field sobriety tests." *Id.* at 301.  Here, the evidence both of poor driving and of impairment is decidedly weaker.  The Court finds that the Defendant is **NOT GUILTY** of Violation No. 4980301, which is driving while under the influence of alcohol or drugs.

## IV. OPEN CONTAINERS OF ALCOHOL

Violation no. 4980303 charges the Defendant with a violation of 36 C.F.R. § 4.14(b), which provides that "[c]arrying or storing a bottle, can or other receptacle containing an

7

alcoholic beverage that is open, or has been opened, or whose seal is broken or the contents of which have been partially removed, within a motor vehicle in a park area is prohibited." Ranger Wilson testified that while retrieving the Defendant's firearm from the rear, passenger-side floorboard pursuant to the Defendant's consent, he encountered a white cup that had overturned in the floorboard, spilling approximately one-half of one cup of beer on the floorboard and onto the firearm. He also said three partially consumed and recapped twelve-ounce bottles of beer were found in the car. The video recording from Ranger Wilson's body camera confirms the beer spilled on the firearm and shows a bottle of beer in a storage net on the back of the passenger's seat.

Ranger Baldwin testified that he inventoried the contents of the Defendant's car following the Defendant's arrest and found multiple opened containers of alcohol inside the Defendant's vehicle. The video recording from Ranger Wilson's dash camera shows Ranger Baldwin removing a white cup from inside the vehicle and pouring a small amount of liquid from it. The video recording also shows Ranger Baldwin removing several containers of alcohol from the vehicle. Although Ranger Wilson testified that the Defendant claimed these bottles were in his car because he was collecting trash in his neighborhood, the Court agrees with Ranger Wilson that this statement is not credible. Notably, several of the open containers were in a soft-sided cooler. The Court finds that the Government has proven beyond a reasonable doubt that the Defendant violated the open container law and that he is **GUILTY** of Violation No. 4980303, charging him with a violation of 36 C.F.R. § 4.14(b).

## V. REFUSAL TO SUBMIT TO BREATH TEST

Finally, the Defendant is charged in Violation No. 4980302 with a violation of 36

C.F.R. § 4.23(c)(2). At the request of a law enforcement officer with probable cause, the operator of a motor vehicle within a national park must submit to "a test of the blood, breath, saliva or urine for the purpose of determining blood alcohol content and drug content." 36 C.F.R. § 4.23(c)(1). "Refusal by an operator to submit to a test is prohibited." 36 C.F.R. § 4.23(c)(2).

In the instant case, the video recording from Ranger Wilson's body camera showed that the Defendant refused to submit to a blood or breath test. The Defendant also signed a refusal-of-consent form. Additionally, the Court finds that Ranger Wilson had probable cause to ask the Defendant to submit to a blood or breath test based upon Ranger Wilson's observation of his driving, Ranger Wilson's observations upon stopping and speaking with the Defendant (glassy eyes, the odor of alcohol in the vehicle, and open containers of alcohol), the Defendant's admission that he had consumed two beers one to one-half hours earlier, the presence of a spilled cup of beer in the Defendant's floorboard, finding multiple narcotic pills in the Defendant's pants pocket, and the Defendant's performance on field sobriety tests. Although the Court discussed above that the Defendant's performance on the field sobriety tests was insufficient to prove *beyond a reasonable doubt* that he was intoxicated to the extent that he was incapable of safely operating a vehicle, probable cause is a much lower standard. Accordingly, the Court finds that the Defendant is **GUILTY** of refusing to submit to a breath or blood test as charged in Violation No. 4980302.

## VI. CONCLUSION

For the reasons set out above, the Court finds that the Defendant is guilty of failure to obey a traffic control device (Violation No. 4729874), operating his vehicle without due care (Violation No. 4729875), driving with open containers of alcohol (Violation No. 4980303), and

refusing to submit to a blood or breath test (Violation No. 4980302). The Court also finds that the Defendant is not guilty of driving under the influence of alcohol or drugs (Violation No. 4980301). The Court will conduct a sentencing hearing to set Defendant Eiland's sentences for the four violations. Defendant Eiland may remain on the conditions of release already imposed by this Court until that time. The Clerk of Court is **DIRECTED** to schedule a sentencing hearing.

    **IT IS SO ORDERED.**

    ENTER:

*[signature: Bruce Guyton]*
United States Magistrate Judge